GUARANTY TRUST CO OF NEW YORK v. AUTOSALES GUM & CHOCO-
LATE CO.   (No. 6633.)

(Supreme Court, Appellate Division, First Department.   December 31, 1914.)

CHATTEL MORTGAGES (§ 124*)—TRUST AGREEMENT—CONSTRUCTION—STOCKS
PLEDGED—"ADDITIONAL SHARES OF STOCK."
    A trust indenture, stipulating that a corporation does "pledge * * * to said trustee the * * * stock hereinbefore described in the schedule * * * hereafter annexed, * * * and also such additional shares of stock as the company may * * * acquire," contemplated within the expression "additional shares of stock" only such additional shares as the corporation might acquire of the stock issues enumerated in the schedule, where any other construction would not be consistent with certain other provisions of the trust indenture, or with the circumstances under which it was executed.

    [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 208, 209;  Dec. Dig. § 124.*]

Submission of controversy between the Guaranty Trust Company of New York, as trustee, etc., and the Autosales Gum & Chocolate Company, on an agreed statement of facts. Judgment for defendants.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, and DOWLING, JJ.

Lansing P. Reed, of New York City, for plaintiff.
George F. Hurd, of New York City, for defendant.

SCOTT, J.   The defendant, a domestic corporation, having power under its charter to purchase, acquire, hold, and dispose of stock, bonds, and other evidences of indebtedness of any corporation, domestic or foreign, and to issue in exchange therefor its own stocks, bonds, and other obligations in payment for property purchased or acquired by it, or for any other objects in and about its business, acquired the business and assets of certain corporations theretofore engaged in the business of the manufacture of candy, chewing gum, and other similar merchandise, and of owning and operating coin-controlled machines for the vending of merchandise, and also the majority of the shares of capital stock of other corporations engaged in similar businesses, and paid for said assets and businesses and capital stock by the issue and delivery to the sellers thereof of stock of the defendant to an aggregate par value of $600,000, being its total authorized capital stock, and 6 per cent. bonds of the aggregate par value of $3,600,000.

Simultaneously with the acts above recited defendant executed and delivered to plaintiff, as trustee, a trust indenture dated May 10, 1911, to secure the issue of the $3,600,000 of bonds issued as above recited. By said trust indenture the defendant made conveyance or assignment to the plaintiff, as trustee, in the following terms:

"Now, therefore, this indenture witnesseth that the said Autosales Gum & Chocolate Company, in consideration of the premises and of the sum of one dollar to it in hand paid by the trustee, the receipt whereof by the company is hereby acknowledged, and to secure the payment of the principal and interest of said bonds, has granted, bargained, sold, assigned, transferred, and set over, and by these presents does grant, bargain, sell, assign, transfer, and set over, unto the Guaranty Trust Company of New York, as trustee, its successor or successors and assigns, all and singular all the trade-marks and trade-names now owned or hereafter acquired by the company, and does hereby pledge, hypothecate, and deliver to said trustee the shares of stock hereinafter described in the schedule, marked 'Schedule A,' hereto annexed as a part hereof, and also all such additional shares of stock as the company may from time to time acquire, together with all the right, title, and interest that the company now has or may have in or to said shares of stock, or arising therefrom or connected therewith.   To have and to hold the said above described shares of stock, trade-marks and trade-names to the trustee, its successor or successors, forever, in trust, nevertheless, for the equal pro rata benefit, security, and protection of the several persons and corporations who shall from time to time own the bonds secured hereby, or any of them, and for the enforcement of the payment thereof and of the interest thereon when payable, in accordance with the true intent and meaning of the stipulations, covenants, terms, and conditions of these presents and of said bonds."

It was provided by said trust agreement that so long as there should be no default in the payment of the principal or interest of the bonds secured thereby all interest, dividends, and increase to which the shares of stock hereby pledged shall from time to time be entitled should be paid over to defendant, which covenanted:

"That it will from time to time do or cause to be done all such acts, and will execute or cause to be executed all such instruments as shall be necessary or proper to carry into effect the purposes and intent of these presents, and will make such further transfers and assurances to the trustee as may from time to time be necessary and proper to vest in the trustee all of the

shares of stock, trade-marks, and trade-names granted, assigned, pledged, and mortgaged hereby or hereunder."

Attached to the trust indenture was the Schedule A referred to therein, which contained a list of 11 issues of stock of various corporations, and the number of shares of each of said issues assigned to plaintiff. Of some of these issues it is recited that the shares assigned constitute the entire issue and outstanding stock of the company.issuing it. As to the majority of issues enumerated there is no such statement, and it is evident that less than the entire issue was assigned and transferred, and it is stated as an agreed fact that at the time of the execution and delivery of the trust indenture negotiations were in progress between the defendant and other holders of stock of the companies mentioned and set forth in said schedule A, looking to the acquisition by defendant of said shares of stock or a part thereof.

The present controversy arises over 750 shares of the preferred stock of the Tenney Candy Corporation acquired by defendant on or about February 1, 1914, in consideration of the assignment and transfer by defendant to said Tenney Candy Company of certain raw material, finished stock, tools, machinery, and other personal property, no part of which had been assigned to or was held by plaintiff under the aforesaid trust indenture. The plaintiff demands judgment that defendant be required to indorse and deliver to it, as trustee under the aforesaid trust indenture, the said 750 shares of the preferred stock of the Tenney Candy Corporation. The defendant resists this demand and asks for judgment denying plaintiff's claim.

The question turns upon the meaning of the provision in the trust indenture that the defendant does thereby—

"pledge, hypothecate, and deliver to said trustee the shares of stock hereinafter described in the schedule, marked 'Schedule A,' hereto annexed as a part thereof, *and also such additional shares of stock as the company may from time to time acquire*," etc.

The plaintiff's contention is that under this provision it is the duty of defendant to assign and transfer to said plaintiff, as trustee, all shares of stock of every description which it, the said defendant, may at any time acquire during the lifetime of the trust indenture. The defendant, on the other hand, contends that the true meaning of the phrase referred to is that it will assign and transfer to plaintiff, as trustee, such additional shares as it may acquire of the stock issues enumerated in the schedule annexed to the indenture, which would not include the stock of the Tenney Candy Company.

While the language of the trust indenture which has given rise to this controversy is not so clear and precise as it might easily have been made, we are disposed to agree with the construction thereof contended for by the defendant. What was primarily assigned was the stock specified in the schedule, but it is agreed that at the time this schedule was prepared defendant was negotiating for more or "additional" shares of the several issues therein specified. If it was these shares which were to be brought under the operation of the trust indenture, there was a certain appositeness in the use of the word "additional," while if it was intended that any stock of any corpora-

tion, not named in the schedule, should be pledged under the trust indenture other forms of expression, far more appropriate, might well have been used.

This construction gains some support from a provision contained in the third paragraph of the trust indenture. to the following effect:

"All stock dividends, if any there be payable upon said shares, shall be transferred and delivered to the trustee, and be by it held for the benefit of the bonds secured hereby, with the same effect and subject to all the conditions and provisions hereof, as if originally pledged hereunder, so that during the entire period of this trust the trustee shall hold, as provided in this indenture, the entire amount of the capital stock of said companies owned by the company, whether the same be increased or not."

If the plaintiff's construction were to be adopted, the clause last quoted would be evident surplusage. The same remark applies to the following provisions as to the disposition of the proceeds of any part of the pledged stock which may be sold as authorized by the terms of the trust indenture:

"All proceeds of the sale or disposition of the shares of stock, trade-marks, or trade-names, sold or disposed of, pursuant to this article, shall be applied by the company to the purchase of the entire capital stock of any other corporation engaged in a business similar to that of the company, or of a majority of such stock, provided the shares of stock so purchased shall be pledged or hypothecated hereunder."

Upon a consideration of the indenture itself, as well as of the surrounding circumstances as set forth in the agreed statement of facts, we are of opinion that the claim of the defendants is the better founded, and judgment is ordered accordingly, without costs. All concur.